**IN THE UNITED STATES DISTRICT COURT**
**FOR THE  DISTRICT OF MARYLAND**

| | |
|---|---|
| EDWARD C. DEDRICK, )<br>)<br>    Plaintiff, )<br>)<br>  vs. )<br>)<br>JOHN BERRY, Director, U.S. )<br> Office of Personnel Management, *et al.*, )<br>)<br>    Defendants. )<br>———————————————————— ) | Civil Action No. WDQ-07-429 |

———————————————————————————

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT AND IN SUPPORT OF**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

———————————————————————————

Rod J. Rosenstein
United States Attorney
Neil R. White
Assistant United States Attorney
U.S. Courthouse
6500 Cherrywood Lane, Fourth Floor
Greenbelt, Maryland  20770
Counsel for Defendant

OF COUNSEL:

| | |
|---|---|
| Earl A. Sanders<br>Office of the General Counsel<br>United States Office of Personnel<br>Management<br>Washington, D.C.  20415 | Michael E. Hokenson<br>Deputy Chief Counsel<br>U.S. Army Test & Evaluation Command<br>4501 Ford Avenue<br>Alexandria, Virginia 22302-1458 |
| James Muetzel<br>Office of the General Counsel<br>United States Office of Personnel<br>Management<br>Washington, D.C. 20415 | Rebecca E. Ausprung<br>Trial Attorney<br>U.S. Army Litigation Division<br>901 N. Stuart Street, Suite 400<br>Arlington, Virginia 22203-1837 |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   PLAINTIFF'S EMPLOYMENT AT AEC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   THE FEBRUARY 2005 INCIDENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   PLAINTIFF'S CRIMINAL CHARGES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.   DEPARTMENT OF THE ARMY REMOVAL ACTION. . . . . . . . . . . . . . . . . . . . . . 6

    E.   PLAINTIFF'S MSPB APPEAL ON THE REMOVAL ACTION. . . . . . . . . . . . . . . 7

    F.   PLAINTIFF'S APPEAL TO THE EEOC ON THE REMOVAL ACTION. . . . . . . . . . . 7

    G.   PLAINTIFF'S DISABILITY RETIREMENT ANNUITY APPLICATION
        AND OPM DECISIONS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    H.   PLAINTIFF'S MSPB APPEAL ON THE OPM DECISION.. . . . . . . . . . . . . . . . . 13

    I.   PLAINTIFF'S EEOC APPEAL OF THE MSPB DECISION REGARDING
        DISABILITY RETIREMENT ANNUITY BENEFITS.. . . . . . . . . . . . . . . . . . . . . . . 15

III.  STANDARDS OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.   SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.   REVIEW OF MSPB DECISIONS GENERALLY BY DISTRICT COURTS. . . . . . . . . . 17

    C.   FURTHER RESTRICTED JUDICIAL REVIEW OF MSPB DECISIONS
        REGARDING DISABILITY RETIREMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A.   THE MSPB'S DECISION AFFIRMING OPM'S DENIAL OF PLAINTIFF'S
        DISABILITY RETIREMENT APPLICATION SHOULD BE AFFIRMED. . . . . . . . . . . . 20

        1.   THE MSPB CONSIDERED ALL THE RELEVANT EVIDENCE IN THIS
            CASE AND ITS FACTUAL DETERMINATIONS ARE NOT SUBJECT TO
            JUDICIAL REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2.  THE MSPB COMMITTED NO ERROR OF LAW DURING THE
    PROCEEDINGS AND IN REACHING ITS DECISION. . . . . . . . . . . . . . . . . . . . . 21

3.  THE MSPB PROPERLY REJECTED PLAINTIFF'S ARGUMENT THAT
    THE BURDEN OF PERSUASION SHOULD HAVE BEEN BORNE BY
    OPM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.  ASSUMING THE COURT REVISITS PLAINTIFF'S AMENDED COMPLAINT
    CHALLENGING HIS REMOVAL BY THE ARMY FOR WORKPLACE VIOLENCE,
    SUCH CLAIMS SHOULD BE DISMISSED ANEW OR SUMMARY JUDGMENT
    GRANTED IN FAVOR OF THE ARMY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    1.  PLAINTIFF'S AMENDED COMPLAINT CHALLENGING HIS REMOVAL
        FOR WORKPLACE VIOLENCE IS UNTIMELY FILED. . . . . . . . . . . . . . . . . 24

    2.  PLAINTIFF CANNOT RELATE BACK HIS COMPLAINT AGAINST THE
        SECRETARY OF THE ARMY TO HIS PRIOR JUDICIAL COMPLAINT
        AGAINST THE DIRECTOR OF OPM. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    3.  PLAINTIFF FAILS TO STATE, AND CANNOT ESTABLISH, A CLAIM
        UNDER THE REHABILITATION ACT BECAUSE HE WAS NOT
        TERMINATED SOLELY BY REASON OF HIS ALLEGED DISABILITY. . . . . . . 27

    4.  PLAINTIFF'S REMAINING CHALLENGES TO HIS REMOVAL MUST BE
        REJECTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE  DISTRICT OF MARYLAND**

| | |
|---|---|
| EDWARD C. DEDRICK,                              ) | |
|                             ) | |
|       Plaintiff,                              ) | |
|                             )   Civil Action No. WDQ-07-429 | |
|   vs.                                                  ) | |
|                             ) | |
| JOHN BERRY, Director, U.S.                   ) | |
|  Office of Personnel Management, *et al.*,     ) | |
|                             ) | |
|       Defendants.                             ) | |
| _____ ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT AND IN SUPPORT OF**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants, John Berry, in his official capacity as Director of the Office of Personnel

Management (OPM), and John McHugh, in his official capacity as Secretary of the U.S. Department

of the Army, by and through their undersigned counsel, Rod J. Rosenstein, United States Attorney

for the District of Maryland, and Neil R. White, Assistant United States Attorney for said District,

respectfully submit this Memorandum in opposition to Plaintiff's motion for summary judgment

(Docket No. 52) and in support of their cross-motion for summary judgment.

## I.  INTRODUCTION

For over five years now, Plaintiff, Edward C. Dedrick, has continued to argue that his

admitted acts of workplace violence should not only be excused because, after the fact, he claims

to have suffered from an undiagnosed disability, but also that he should be entitled to disability

retirement annuity benefits following his removal for cause from the federal service.

His lawsuit stems from two separate appeals he filed with the Merit Systems Protection

Board (MSPB).  On February 10, 2005, while employed by the U.S. Army as a General Engineer

at the Army Evaluation Center at Aberdeen Proving Ground, Plaintiff became extremely upset when

his supervisor would not permit him to drive from Maryland to Florida and then drive separately to Texas for temporary duty.  In a fit of rage, he lifted a heavy desk onto the lap of his supervisor and then returned to his office where he kicked his wall partition and smashed his government computer. He was immediately placed on administrative leave and subsequently removed from his position.

Plaintiff filed a "mixed case" complaint with the MSPB, alleging that the removal was improper and was discriminatory on the basis of his claimed disability, "intermittent explosive disorder."   An MSPB administrative judge sustained the removal and found no evidence of discrimination.  The full MSPB board affirmed the administrative judge.  Plaintiff then appealed to the EEOC which, on February 8, 2007, concurred in the MSPB decision.

After his removal, Plaintiff also applied for a disability retirement annuity with OPM.  OPM denied his application, finding that his condition was treatable and that Plaintiff was not disabled for disability retirement purposes.  Plaintiff appealed the OPM decision to the MSPB which concurred in the decision to deny disability retirement.  Plaintiff then appealed this MSPB decision to the EEOC which concurred in the MSPB decision.

Plaintiff filed his *pro se* original Complaint in this Court (Docket No. 1) solely against the Director of OPM to obtain disability retirement benefits.  His original Complaint alleged that OPM discriminated against him in denying him disability retirement benefits because OPM did not view him as disabled.  As established below, under the very narrow governing standard of judicial review, the MSPB's affirmance of OPM's denial of Plaintiff's application for a disability retirement annuity should be affirmed by this Court.

On May 8, 2007, Plaintiff amended his original Complaint to allege an underlyingmely cause of action for disability discrimination against the Army.  Docket No. 5.  The EEOC provided notice of its final decision to both Plaintiff and his attorney of record on February 8, 2007.  Plaintiff had

30 days, in accordance with 5 U.S.C. § 7703(b)(2), to file his discrimination claims.  Yet his Amended Complaint alleging a cause of action against the Secretary of Army was filed nearly 90 days following the EEOC decision.  In this portion of his Amended Complaint, Plaintiff alleges a cause of action under the Rehabilitation Act, claiming that he was terminated because of his alleged disability, as opposed to because of his violent actions in the workplace.  Even if Plaintiff's Amended Complaint had been timely (and it is not), Plaintiff failed to state a claim under the Rehabilitation Act as he cannot establish that he was terminated because of his alleged disability.  The record is clear that Plaintiff was discharged as a result of his admittedly-violent actions in the workplace and not due to any claimed disability.  As such, Plaintiff is not entitled to utilize the protections of the Rehabilitation Act.

After full briefing of these issues back in 2007, on January 11, 2008, this Court entered a Memorandum Opinion, explaining that Plaintiff "has alleged no facts which, if proven, would constitute even a minimum prima facie case of disability discrimination."  Docket No. 29, at 4 (underscoring supplied).  As a consequence (and/or because the Amended Complaint against the Army was plainly untimely), the Court dismissed Plaintiff's claims against the Army and transferred his claims against OPM to the U.S. Court of Appeals for the Federal Circuit.  *See* Docket No. 35.

On July 21, 2009, the Federal Circuit distinguished its precedent in *Hill v. Dep't of the Air Force*, 796 F.2d 1469, 1471 (Fed. Cir. 1986), relied upon by this Court, and concluded that this case remained a "mixed case" over which it did not have jurisdiction, regardless of the lack of merit of Plaintiff's claims of disability discrimination.  *See Dedrick v. Berry*, 573 F.3d 1278, 1280-81 (Fed. Cir. 2009).  In addition, even though Plaintiff did not appeal this Court's Order dismissing his claims against the Army (and even though there was no final judgment as to all claims), the Federal Circuit found both the dismissal and transfer orders to be appealable, and transferred the matter to the

-3-

Fourth Circuit. *Id.* at 1282. On April 1, 2010, the Fourth Circuit, remanded the matter to this Court "so that Dedrick's unresolved disability retirement benefits claim may be adjudicated." Docket No. 41 (underscoring supplied). Significantly, the Fourth Circuit made no mention in its Order that Plaintiff's disability discrimination claims against the Army, or any other claims arising from his removal, remained to be adjudicated.

Nevertheless, in his July 1, 2010, motion for summary judgment, Plaintiff contends that the Court should review all of his claims regarding his removal and his request for a disability retirement. Indeed, without contesting the underlying facts giving rise to his removal or regarding his application for disability retirement annuity, he claims he is entitled to summary judgment in his favor on both aspects of this lawsuit. Contrary to the requirements of Rule 56, Plaintiff's submission offers few citations to the extensive administrative record to support his factual allegations and few citations to controlling case authority. Moreover, Plaintiff has attempted to interject un-exhausted issues that are nearly two decades old into this case.

Defendants take the position that the Court need not review any of Plaintiff's claims against the Army surrounding his removal, as such claims were previously dismissed by the Court and the Fourth Circuit only remanded as to the disability retirement portion of the case. In an abundance of caution, however, in addition to proving OPM's entitlement to summary judgment regarding the disability retirement annuity, the Army shall reiterate herein its previous arguments showing that Plaintiff presents no cognizable Rehabilitation Act claims (or that summary judgment should be granted in its favor as to such claims), and show that any other challenges Plaintiff advances to his removal should be rejected.

Accordingly, Plaintiff's motion for summary judgment should be denied and Defendants' cross-motion for summary judgment should be granted as to all remaining claims in this case.

## II. <u>STATEMENT OF FACTS</u>

**A.    PLAINTIFF'S EMPLOYMENT AT AEC**

Plaintiff was an employee of the United States Army Evaluation Center (AEC).  Defendants'

Exhibit (DEX) 1 – Notification of Personnel Action.  He was employed as a NH-0801-III General

Engineer in the Reliability and Maintainability Directorate (R&M).  *Id.*  His immediate supervisor

at AEC was Ms. Debra Grady and his second-level supervisor was Mr. Stephen Yuhas.  DEX 2 –

MSPB Testimony of Stephen Yuhas, at 7-8.

**B.    THE FEBRUARY 2005 INCIDENT**

On February 10, 2005, Ms. Grady denied Plaintiff's request to drive, rather than fly, from

Maryland to temporary duty locations in Florida and Texas.  DEX 3 – MSPB Testimony of Debra

Grady, at 79.  Ms. Grady had spoken to Plaintiff about the trips and inquired if he had a fear of

flying.  *Id.* at 76.  Plaintiff stated that he did not have a fear of flying; he just did not like the hassle

of flying and he could not take his pocket knife on the plane.  *Id.* at 75-76.  Plaintiff also stated that

he had recently purchased a lawnmower on Ebay and he was planning to drive to Texas via

Oklahoma and pick up the lawnmower.  *Id.* at 76.  Ms. Grady decided to cancel Plaintiff's scheduled

trip to Florida because there was no real need for him to attend the meeting and determined that he

could participate in the Texas meeting via video teleconference.  *Id.* at 79.

After this decision, Plaintiff went to Mr. Yuhas and said that he was going to Occupational

Health for assistance with stress.  DEX 2, at 15.  A few hours later, Mr. Yuhas saw Plaintiff in the

hall appearing stressed and agitated.  *Id.* at 16.  Mr. Yuhas invited Plaintiff into his office. Plaintiff

said that he could not get in touch with Occupational Health and he was unable to reach a family

member to take him home.  *Id.* at 16.  Mr. Yuhas calmly directed Plaintiff back to his own office

to determine what could be done to transport him home.  *Id.* at 17.  At that point, Plaintiff lifted Mr.

Yuhas's desk, which weighed several hundred pounds, and attempted to flip it over. *Id*. at 18. The

desk hit Mr. Yuhas on his knees and legs and all of contents spilled on top of him. *Id*. at 18-19.

Plaintiff left Mr. Yuhas's office and returned to his own work space. DEX 4 – MSPB

Testimony of Mitchell Fujiwara, at 49. Plaintiff kicked and damaged his cubicle walls, and began

pulling on his computer. *Id*. Plaintiff's office mate, Mitchell Fujiwara, fled the office at that point.

*Id*. Plaintiff then picked up his government-owned computer and threw it onto the floor. DEX 2,

at 22. Plaintiff's actions destroyed his government-owned computer, docking connector, and LCD

monitor screen. *Id*.

### C.    PLAINTIFF'S CRIMINAL CHARGES

As a result of his conduct on February 10, 2005, Plaintiff was arrested by the military police

and charged with multiple criminal violations. Specifically, Plaintiff was charged with damage to

government property in violation of 18 U.S.C. § 1361; simple assault in violation of 18 U.S.C. §

113; and disturbing the peace and disorderly conduct, in violation of Maryland Criminal Law § 10-

201, as assimilated by 18 U.S.C. §§ 7 & 13. DEX 5 – Offer of Deferred Adjudication.

On October 28, 2005, Plaintiff signed an agreement wherein he admitted to the criminal

violations as charged and agreed to make restitution in the amount of $2,667.80 in exchange for

dismissal of the criminal charges against him. DEX 6 – Acceptance of Agreement.

### D.    DEPARTMENT OF THE ARMY REMOVAL ACTION

Plaintiff received a notice of proposed removal on April 27, 2005. DEX 7 – Notice of

Proposed Removal. The Notice clearly stated that Plaintiff's proposed removal was due to: (1)

Conduct Unbecoming a Federal Employee; (2) Creating a Disturbance causing Disruption in the

Workplace; (3) Destruction/Damage of Personal Property of a Supervisor; (4) Destruction and

Misuse of Government Property; and (5) Violation of the Aberdeen Proving Ground Workplace Violence Policy. *Id*. at ¶ 1.[1]

Plaintiff provided a response to the Notice of Proposed Removal through his attorney, wherein he admitted that with "regard to the tipping of the desk and damage to a computer, the Notice presents events generally as they occurred, it is believed." DEX 8 – Response to Notice of Proposed Removal at 2.

On August 4, 2005, the deciding official, Mr. William Hughes, found that the evidence supported the charges and that removal from Federal service was warranted. DEX 9 – Decision Notice of Proposed Removal. The Decision Notice provided exceptional detail and fully explained to Plaintiff the rationale of the deciding official. *Id.*

E.    **PLAINTIFF'S MSPB APPEAL ON THE REMOVAL ACTION**

Plaintiff appealed his removal to the MSPB and, after conducting hearings on the matter, an MSPB administrative judge issued an Initial Decision on July 5, 2006, finding that the Army had proven the charges and that there was no evidence of disability discrimination. *Dedrick v. Army*, 2006 MSPB LEXIS 3344 (MSPB July 5, 2006) (DEX 10 – Initial Decision on Removal).

Plaintiff timely filed a petition for review to the full MSPB Board which issued a decision affirming the Initial Decision. *Dedrick v. Army*, 2006 MSPB LEXIS 6552 (MSPB Nov. 16, 2006) (DEX 11– MSPB Final Decision on Removal).

F.    **PLAINTIFF'S APPEAL TO THE EEOC ON THE REMOVAL ACTION**

Plaintiff, through his counsel of record, then sought review of the MSPB finding on his disability discrimination claim with the Equal Employment Opportunity Commission (EEOC) on

---

[1]The Workplace Violence Prevention Program assessed the situation in March and April 2005 and prepared a report. *See* Exhibit 7A.

December 5, 2006.  DEX 12 – EEOC Petition for Review.  Plaintiff's attorney listed only his own address on the petition.  *Id*. at 21.

The EEOC, Office of Federal Operations (OFO), issued a decision on February 8, 2007, that concurred with the MSPB and found no evidence of discrimination. *Dedrick v. Harvey,* 2007 EEOPUB LEXIS 395, 2007 WL 506618 (EEOC Feb. 8, 2007) (DEX 13 – EEOC OFO Decision).

The EEOC decision clearly noted, in bold print, that Plaintiff had <u>thirty (30) calendar days</u> to file any judicial complaint.  *Id*. at 2 under "Petitioner's Right to File a Civil Action."  The EEOC decision was sent to Plaintiff's attorney, Ari Taragin, and to Plaintiff, in care of Mr. Taragin.  *Id*. at 4.

## G.   PLAINTIFF'S DISABILITY RETIREMENT ANNUITY APPLICATION AND OPM DECISIONS

By application dated August 12, 2005, Plaintiff voluntarily applied for disability retirement benefits with OPM after being removed from his position as a general engineer with the Army. (DEX 14A – Disability Retirement Application).  On his application, Plaintiff claimed that high blood pressure, "Impulse Control Disorder," and "Intermit[tent] Explosive Disorder" (which he also asserted was "reactive to psychological stressors") were his disabling conditions.  *Id.* at Box 4.  He also claimed that official travel connected with his employment caused stressors which raised his blood pressure, leading to incidents of his intermittent explosive disorder and impulse control disorder.  *Id.* at Box 5.  Plaintiff indicated that he was taking medication for the condition and that he was having his blood pressure monitored.  He also stated on his application form that he had requested the Army to eliminate his air travel, restrict his travel by other methods of transportation generally, and "allow time or time off to reduce and cope when the job stressors which become excessive."  *Id.* at Boxes 6 & 7.

The administrative record also includes a "Supervisor's Statement," signed by Stephen Yuhas. DEX 14B. Mr. Yuhas's statement indicated that Plaintiff had been separated by removal, effective August 4, 2005, and summarized the charges which had been the basis for the removal. The Supervisor's Statement also explained that Plaintiff's conduct had become unsatisfactory and his attendance at work was no longer acceptable due to the removal. Regarding the question of whether efforts were made to accommodate Plaintiff's alleged disability, Mr. Yuhas stated that no accommodations had been offered to Plaintiff because "there was no knowledge of any such disability" prior to the incidents of February 10, 2005.

Also included in the administrative record of the proceedings before the MSPB is an "Agency Certification of Reassignment and Accommodation Efforts." DEX 14C. On that form, the certifying officer, who held the title of Equal Employment Specialist, stated that no accommodation had been made with regard to Plaintiff because "the employee's condition does not appear to require accommodation. Medical information presented to agency does not document any disabling medical condition." The form also certified that reassignment to another position was not possible because of the removal and that there was no temporary employment for the same reason.

The primary medical evidence that Plaintiff submitted in support of his application were psychological evaluations by a clinical psychologist, Jerome Rubin, Ph.D. There are reports of examinations dated May 5, 2005 (based upon an evaluation conducted May 3, 2005) and July 11, 2005 (based upon an evaluation conducted July 8, 2005). There is also a letter addressed to Plaintiff's attorney, Peter T. McDowell, Esq., dated June 27, 2005, essentially paraphrasing the May 5, 2005 examination report. These documents are collectively annexed hereto as DEX 14D.

In his report dated May 5, 2005, Dr. Rubin noted that Plaintiff was mentally alert and "well oriented in all spheres." DEX 14D at 1. He also found that Plaintiff was intelligent, cooperative,

and able to manage self-control in cooperation with the examination.  The report of May 5, 2005, noted that Plaintiff had been prescribed the drug Lisinopril (for high blood pressure or hypertension) by a physician.  The report explained that Plaintiff asserted that he had a history of "unstable blood pressure" which he claimed was "triggered by emotional stress" and caused him to experience "heightened arousal and emotions with irritability, sleep deprivation, G.I. track pain and a degraded ability for concentration and reasoning and loss of self-control."  *Id.* at 2.  The report indicates that Plaintiff asserted that the incidents of February 10, 2005, grew out of such symptoms.

Dr. Rubin stated that he had "conducted a clinical interview and observation of" Plaintiff and had excluded various other causes, such as "manic disorder, psychosis, anti-social personality disorder, borderline personality disorder, conduct disorder, or adult-form ADHD [attention deficit hyperactivity disorder]."  *Id.* at 3.  Dr. Rubin stated that in the absence of such stressors causing his intermittent explosive disorder symptoms to be displayed, plaintiff was socially well adapted, displayed good manners, engaged in normal conversation, had no pressured speech, and was not hypervigilant.  Dr. Rubin recommended that plaintiff "continue in treatment with his medical doctor and also [enter] psychotherapy and anger management counseling to address his psychological disorder."  *Id.* at 3-4.  Dr. Rubin noted that plaintiff expressed willingness to follow the advice and appeared to be a favorable candidate for treatment.  The letter to Mr. McDowell of June 27, 2005 was essentially an abridged and less technical paraphrasing of his May 5, 2005 report.  DEX 14D, at 5-6.

The July 11, 2005 report by Dr. Rubin (DEX 14D, at 7-9) indicates that Plaintiff had appeared for several appointments with Dr. Rubin and that he had been cooperative in the treatment administered by Dr. Rubin as well as Plaintiff's physician.  In this July 11, 2005 report, Dr. Rubin attributed Plaintiff's emotional outbursts to a combination of high blood pressure causing secretions

-10-

from the brain that produced Plaintiff's inability to resist aggressive impulses, combined with psycho-social influences that resulted in Plaintiff having both Impulse Control Disorder and Intermittent Explosive Disorder. *Id.* at 8. Dr. Rubin stated that Plaintiff needed both the medication he was receiving for the high blood pressure (Lisinopril) and continued psychological treatment of his behavior disorder.

In contrast to Dr. Rubin's analysis, Dr. Robert A. Barthel, M.D., stated in a letter dated September 7, 2005, addressed to plaintiff, that he did not believe that plaintiff suffered the mental conditions cited by Dr. Rubin. DEX 14E. Specifically, Dr. Barthel cited Dr. Rubin's statements that there was no "expression of anger, abnormal suspicions, or hostile attitude" by plaintiff, and that there was "no clinical evidence of delusions or hallucinations and no evidence of disordered thoughts or psychotic thinking." *Id.* Dr. Barthel concluded that the only medical condition suffered by plaintiff was the physical condition of hypertension, which he stated was "easily controlled by any number of medications without significant side effects." *Id.*

On February 9, 2006, OPM issued an initial decision denying Plaintiff's application, concluding that he did not meet the eligibility requirements for disability retirement benefits because he was not "disabled" within the meaning of retirement law. (DEX 15 – OPM Disability Retirement Initial Decision). OPM's initial decision specifically referred to Dr. Rubin's evaluations of May 5, 2005 and July 11, 2005, as well as the letter from Dr. Rubin to Mr. McDowell of June 27, 2005. *Id.* at 3. The initial decision noted that Dr. Rubin had opined that plaintiff suffered from intermittent explosive disorder and impulse control disorder partly as a result of his physical condition of hypertension. Significantly, however, OPM's initial decision noted that there were no records of any treatment of Plaintiff for hypertension (or any other medical or psychiatric condition) <u>prior to February 10, 2005</u>. *Id.* In addition, the initial decision described Dr. Rubin's findings that Plaintiff

had good recent and remote memory, expressed himself in a clear logical matter, was average in intelligence, vocabulary, reasoning, comprehension and judgment.  Dr. Rubin had also stated that Plaintiff had no expression of anger, abnormal suspicions, or hostile attitude, and he saw no clinical evidence of delusions or hallucinations and no evidence of Plaintiff having disordered thoughts or psychotic thinking.

In its initial decision, OPM also cited the letter of Dr. Barthel concluding that Dr. Rubin's reports of his medical examinations failed to support a claim that Plaintiff was suffering from a mental condition and noting that his hypertension was easily treatable.  *Id.*

The initial decision also cited the Supervisor's Statement and the Agency Certification of Reassignment and Accommodation Efforts, both of which had stated that the agency had no information prior to the February 10, 2005 incidents that Plaintiff was suffering from any medical condition.  *Id.* at 3.

Based upon all these reasons, OPM denied Plaintiff's application for disability retirement. The letter advised Plaintiff of his right to seek reconsideration, including submission of additional medical evidence, and included suggestions as to the type of medical evidence that might be of assistance to his claim.  *Id.* at 4.

Plaintiff requested reconsideration of the OPM decision, and on May 8, 2006, OPM upheld its initial decision denying disability retirement benefits and informed Plaintiff of his right to appeal the reconsideration decision to the MSPB. (DEX 16 – OPM Final Decision).  In its decision, OPM noted that Plaintiff had failed to submit additional medical evidence, as he indicated he would do at the time he filed his request for reconsideration.  *Id.* at 2.  Nevertheless, OPM again reviewed Plaintiff's case file and again held that the reports of Dr. Rubin failed to demonstrate that Plaintiff suffered a mental disease or injury that led to his removal.  The reconsideration decision reiterated

that the details in the reports presented by Dr. Rubin did not support his conclusion that Plaintiff suffered from intermittent explosive disorder or impulse control disorder.

Similarly, the reconsideration decision noted that there had been no submission of any evidence regarding continuing psychological treatment or psychotherapy that Dr. Rubin had said would be required of Plaintiff in order to control his condition.  In addition, the reconsideration decision noted that there was a lack of any evidence even of the physical condition of hypertension or high blood pressure that Dr. Rubin characterized as part of the causes for Plaintiff's behavior of February 10, 2005.

Based upon its review of the evidence of record, OPM affirmed the initial decision's denial of Plaintiff's application for disability retirement.  The reconsideration decision advised Plaintiff of his right to appeal OPM's decision to the MSPB.  *Id.* at 3-4.

## H.    PLAINTIFF'S MSPB APPEAL FROM THE OPM DECISION

Plaintiff appealed OPM's reconsideration decision to the MSPB on June 2, 2006.  Following the submission of his appeal, Plaintiff submitted additional medical evidence in the form of a new evaluation and report by Dr. Rubin.  DEX 16A.  The date of the report was June 26, 2006, based upon an evaluation of plaintiff on June 23, 2006.  In that report, Dr. Rubin reiterated many of the conclusions in his earlier report.  He also responded to Dr. Barthel's letter, which had concluded that Dr. Rubin's earlier reports did not support his conclusions.  Dr. Rubin's June 26, 2006 report asserted that Plaintiff, after the February 10, 2005 episode, had placed himself "under medical and psychological supervision for medication, blood pressure monitoring, behavior management, and psychotherapy."  *Id.* at 3.  Dr. Rubin stated that Plaintiff had been compliant with the therapy.  Dr. Rubin also stated that he believed that Plaintiff had suffered the mental conditions before his initial examination, but that he had failed to understand the seriousness of his condition.  *Id.*

-13-

After conducting an evidentiary hearing on the merits, an MSPB administrative judge issued an initial decision, dated September 11, 2006, affirming OPM's reconsideration decision that Plaintiff was not entitled to disability retirement benefits.  *Dedrick v. OPM*, 2006 MSPB LEXIS 5193 (MSPB Sep. 11, 2006) (DEX 17 – OPM MSPB Initial Decision).  The MSPB's initial decision first reviewed in detail the medical evidence that had been presented.  The initial decision stated that the decision was based upon all of the evidence in the record relating to the disability retirement appeal, including objective clinical findings, diagnoses and medical opinions, subjective evidence of pain and disability, and all evidence relating to the effect of Plaintiff's condition on his ability to perform the duties of the position that he had last occupied. [2]

The administrative judge found that Plaintiff's blood pressure problems had been well documented and that Dr. Rubin's diagnosis of impulse control disorder and intermittent explosive disorder "is reasoned and entitled to probative value reached on the factors that I must consider in assessing the weight to be accorded a medical opinion."   *Id.* at *12-13.   Nevertheless, the administrative judge also found that the evidence showed that these conditions were fully amenable to treatment and control and that they posed no impediment to Plaintiff's employment if he complied with the recommended treatment.  *Id.* at *13.  In short, the initial decision held that, although Plaintiff had demonstrated the existence of his claimed medical conditions, he had failed to demonstrate that those conditions could not be controlled sufficiently to permit him to perform the duties of his position.  Further, the administrative judge held that the incidents of February 10, 2005 had been transitory and essentially resolved, according to Dr. Rubin, by June 2005.  *Id.*

---

[2] Plaintiff had submitted portions of the administrative hearing record in his adverse action appeal against Army, as well as other evidence submitted in that other appeal.  The initial decision stated that the Administrative judge considered the testimony in the transcript of the other appeal in the disability retirement appeal, but not other evidence submitted in the adverse action appeal.

Addressing allegations of disability discrimination, the administrative judge stated:

> The appellant also raises a claim that, by denying his application for benefits, OPM discriminated against him on the basis of disability.  From his hearing testimony, it appears his claim is under the "regarded as" definition of disability.  *See* 29 C.F.R. § 1630.2(g) (2005) (a "disabled person is one who (1) is substantially limited in a major life activity, (2) has a record of such a limitation, or (3) is regarded as having such a limitation).  Putting aside that such a claim seems a contradiction in terms – if OPM had regarded him as disabled, it likely would have approved his claim for disability retirement benefits – I find that there is no evidence to support a finding that he is a "disabled person" under any regulatory definition of disability.

*Id.* at *13-14 (internal citations omitted).

Plaintiff filed a petition for review of the MSPB's initial decision with the full MSPB Board.  On November 15, 2006, the full Board rejected Plaintiff's petition, holding that "there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome."  *Dedrick v. OPM*, 2006 MSPB LEXIS 6553 (MSPB Nov. 15, 2006) (DEX 18 – MSPB Final OPM Decision).  This constituted the final administrative decision regarding Plaintiff's application for disability retirement.

I.  **PLAINTIFF'S EEOC APPEAL OF THE MSPB DECISION REGARDING DISABILITY RETIREMENT ANNUITY BENEFITS**

Plaintiff filed a petition with the EEOC seeking review of the Board's final decision concerning his claim of disability discrimination and the EEOC concurred in the MSPB decision.  *Dedrick v. Springer*, 2007 EEOPUB LEXIS 214 (EEOC. Jan. 25, 2007) (DEX 19 – EEOC OPM Decision).  The EEOC noted that "the MSBP's decision constitutes a correct interpretation of the laws, rules, regulations, and policies governing this matter and is supported by the evidence in the record as a whole."  *Id.* at 1.

### III. <u>STANDARDS OF REVIEW</u>

**A.** **S<small>UMMARY</small> J<small>UDGMENT</small>**

Under Fed. R. Civ. P. 56(c), a court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  As the Supreme Court has emphasized, "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Trial courts should enter summary judgment "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Indeed, the Supreme Court has noted that a principal purpose of Rule 56 "is to isolate and dispose of factually unsupported claims or defenses . . . ."  *Id.* at 323-324.  The Fourth Circuit also has emphasized that trial judges have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.) (citation omitted), *cert. denied,* 474 U.S. 829 (1985).  If the opponent of a summary judgment does not have a reasonable prospect of prevailing the parties should not be subjected to the time and expense of trial. *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir. 1989).  A subjective, albeit genuine, belief of

-16-

discrimination will not, in the employment discrimination context, shield a non-moving plaintiff from a grant of summary judgment. *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

## B.   REVIEW OF MSPB DECISIONS GENERALLY BY DISTRICT COURTS

Congress passed the Civil Service Reform Act (CSRA) in 1978 that, *inter alia*, enables most federal employees to appeal an adverse employment action to the MSPB. *Lindahl v. OPM*, 470 U.S. 768, 773-74 (1985) (citing 5 U.S.C. § 7701, *et seq.*).   Ordinarily, petitions for judicial review of MSPB actions are filed in the Court of Appeals for the Federal Circuit and are reviewed on the administrative record.  5 U.S.C. § 7703(b)(1), § 7701(c)(1)-(3).   Where a claim of discrimination on the basis of race, color, religion, sex, national origin, handicap, or age is coupled with a nondiscrimination claim, however, the entire "mixed case" is filed in the district court. *Id.*; 5 U.S.C. § 7703(b)(2).   On the discrimination claim, the petitioner "shall have the right to have the facts subject to trial de novo by the reviewing court." 5 U.S.C. § 7703(c). The nondiscrimination claim in a mixed case, however, is reviewed on the administrative record under § 7703(c)(1)-(3). *See* 29 C.F.R. § 1614.302(a)(2); *accord Hooven-Lewis v. Caldera*, 249 F.3d 259, 265-66 (4th Cir. 2001); *Rupert v. Geren*, 605 F. Supp. 2d 705, 713 (D. Md. 2009) (Blake, J.).

The proper standard of review of the non-discriminatory portion of Plaintiff's claims (other than those involving disability retirement, discussed below) is whether the MSPB's actions, findings, or conclusions are: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.  5 U.S.C. § 7703(c)(1)-(3); *USPS v. Gregory*, 534 U.S. 1, 6-7 (2001). "Substantial evidence consists of such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Briggs v. Dalton*, 984 F.Supp.

353, 356 (D. Md. 1997) (Blake, J.) (quotations omitted); *accord, e.g., Valmont Indus. v. NLRB*, 244 F.3d 454, 463 (5th Cir. 2001) ("under the substantial evidence standard of review, 'the ALJ's decision must be upheld if a reasonable person could have found what the ALJ found, even if the appellate court might have reached a different conclusion had the matter been presented to it in the first instance.").

Plaintiff bears the burden of proving "arbitrariness or capriciousness, procedural impropriety, or lack of substantial evidence. *Rupert v. Geren*, 605 F. Supp. 2d at 713 (quoting *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998)).

**C.      FURTHER RESTRICTED JUDICIAL REVIEW OF MSPB DECISIONS REGARDING DISABILITY RETIREMENT**

Unlike the general standards of judicial review of MSPB decisions set forth in 5 U.S.C. § 7703(c) (and described above), Congress has imposed particular limitations on the jurisdiction of courts to review decisions of the MSPB in appeals of OPM decisions denying applications for disability retirement under both the Civil Service Retirement System (CSRS) and the parallel retirement system mainly covering employees first employed after 1983, the Federal Employees Retirement System (FERS). In reviewing the decisions in those matters, the Court is precluded from exercising its jurisdiction to review the factual determinations of the MSPB concerning a petitioner's claim for disability retirement. The relevant statute governing judicial review of disability retirement decisions under CSRS is 5 U.S.C. § 8347(c), which provides in pertinent part that:

> The Office [OPM] shall determine questions of disability and dependency arising under this subchapter. Except to the extent provided under subsection (d) of this section, the decisions of the Office concerning these matters are final and conclusive and are not subject to review.

The Supreme Court and the Federal Circuit (the usual forum for review of MSPB decisions in appeals of disability retirement applications by OPM) have interpreted this provision, and the

-18-

nearly identical provision of the FERS, 5 U.S.C. § 8401, 8461(d), as sharply limiting a reviewing court's scope of review in disability retirement cases. The Supreme Court and the Federal Circuit have held that these statutes preclude any judicial review of the factual underpinnings of decisions of OPM, as affirmed by MSPB, although questions of law are subject to limited review. *See Lindahl v. OPM*, *supra*; *Anthony v. OPM*, 58 F.3d 620, 624-26 (Fed. Cir. 1995).

In disability retirement cases arising under CSRS, the courts have consistently restricted the standard of review for disability retirement determinations. As explained by the Supreme Court in *Lindahl*:

> Under the " *Scroggins* " standard, so-called after *Scroggins v. United States,* 184 Ct. Cl. 530, 397 F.2d 295, *cert. denied*, 393 U.S. 952 (1968), courts acknowledged that § 8347(c) imposes "a special and unusual restriction on judicial examination, and under it courts are not as free to review Commission retirement decisions as they would be if the 'finality' clause were not there." Accordingly, courts emphasized that they could not weigh the evidence or even apply the traditional substantial-evidence standard for reviewing disability determinations. Courts also held, however, that § 8347(c)'s finality language did not prevent them from reviewing Commission decisions to determine whether there had been " 'a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error "going to the heart of the administrative determination."'"

470 U.S. at 780-81 (internal citations omitted). *See also id.* at 791 ("Accordingly, while the factual underpinnings of § 8347 disability determinations may not be judicially reviewed, such review is available to determine whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'") (quoting *Scroggins*); *accord Lee v. OPM*, 762 F. 2d 987, 988 (Fed. Cir. 1985); *Hackett v. OPM*, 721 F.2d 580, 582 (6th Cir. 1983); *Turner v. OPM*, 707 F.2d 1499, 1503 (D.C. Cir. 1983).[3]

_____

[3]Removing any possible doubt concerning the issue, the Supreme Court noted further in *Lindahl* that "Lindahl's complaint also alleged that the disability denial was not supported by substantial evidence. [ ] Lindahl has not pursued this allegation on appeal, and in any event it is

Therefore, this Court has no jurisdiction to review the MSPB's analysis and weighing of the evidence before it in reaching its decision.  This preclusion of judicial review by 5 U.S.C. § 8347(c) of the factual underpinnings of the MSPB decision includes the MSPB's analysis of all of the medical evidence submitted by Plaintiff and the MSPB's conclusions whether that evidence was sufficient to show that Plaintiff was suffering from a condition which could not be treated and therefore preventing him from performing the duties of his position.

## IV.  ARGUMENT

**A.    THE MSPB'S DECISION AFFIRMING OPM'S DENIAL OF PLAINTIFF'S DISABILITY RETIREMENT APPLICATION SHOULD BE AFFIRMED**

### 1.    THE MSPB CONSIDERED ALL THE RELEVANT EVIDENCE IN THIS CASE AND ITS FACTUAL DETERMINATIONS ARE NOT SUBJECT TO JUDICIAL REVIEW

The MSPB's initial decision considered and discussed all of the medical evidence Plaintiff submitted.  Indeed, after reciting the evidence in the record, <u>including the live testimony of Dr. Rubin and Plaintiff at the hearing</u>, the Administrative judge stated:

> In addressing the remaining requirements [of entitlement to CSRS disability in addition to the five-year minimum service requirement], I must consider the probative value of all the evidence submitted, taking into account the objective clinical findings, diagnoses and medical opinions, subjective evidence of pain and disability, and all evidence relating to the effect of the appellant's condition on his ability to perform in the position last occupied.

DEX 17, at *11.

The MSPB also considered and discussed whether that evidence showed that Plaintiff's medical conditions could be treated so as to permit him to perform satisfactorily in his former position.  In so doing, the administrative judge accepted as valid for such purposes Dr. Rubin's diagnosis of Plaintiff's physical and mental medical problems.  However, the administrative judge

---

barred by 5 U.S.C. § 8347(c)."  470 U.S. at 768 n.10.

also referred to that evidence as demonstrating that Plaintiff's conditions could be well controlled by appropriate treatment and that the medical conditions would not preclude Plaintiff from being able to perform the duties of his position. *See id.* at *13.

Even assuming for the purposes of argument that the MSPB's decision were being reviewed under the familiar "arbitrary and capricious" and "substantial evidence" standards embodied in 5 U.S.C. § 7703(c), its full consideration of all relevant evidence and reasoned weighing of that evidence against the applicable law (discussed below) would pass muster. The fact that its decision is being reviewed under 5 U.S.C. § 8347(c), precluding judicial review of the MSPB's factual determinations, insulates it even further.

### 2. THE MSPB COMMITTED NO ERROR OF LAW DURING THE PROCEEDINGS AND IN REACHING ITS DECISION

In Plaintiff's summary judgment memorandum, he argues that OPM should have granted disability retirement merely because he was removed for cause by Army, and that OPM should not have required him to demonstrate that he was disabled to perform the duties of his position because of his medical condition. Docket No. 52, at 13-14, and 17-18. Plaintiff's argument ignores the statutory language concerning entitlement to disability retirement, which provides, in relevant part:

> Any employee shall be considered to be disabled <u>only</u> if the employee is found by the Office of Personnel Management to be unable, <u>because of disease or injury</u>, to render useful and efficient service in the employee's position . . . .

5 U.S.C. § 8337(a) (emphasis supplied).

This point was emphasized in *Licausi v. OPM,* 350 F.3d 1359, 1361-62 (Fed. Cir. 2003), in which the Federal Circuit held that both 5 U.S.C. § 8337 and the implementing regulations issued by OPM clearly required that a disease or injury must render the individual unable to perform the duties of his position in order to be eligible for a disability annuity:

-21-

The term "disability," as used in the CSRS disability statute and regulations, thus contemplates not only the existence of a qualifying medical condition also the inability to render useful and efficient service in the employee's position or another similar position.

*Id.* at 1362.

Thus, the MSPB correctly focused its attention in this case on whether Plaintiff's alleged medical conditions were so untreatable as to prevent him from performing the duties of his former position.  It is not sufficient that an employee may be able to demonstrate that he is suffering from a medical condition.  Entitlement to disability retirement under CSRS requires that an individual also show that the medical condition prevents him from performing the duties of his position satisfactorily.

Plaintiff also asserts that *Vanieken-Ryals v. OPM* , 508 F.3d 290 (Fed. Cir. 2007), supports his view that OPM and the MSPB should not have analyzed his application for disability retirement by means of determining whether the medical evidence supported the existence of a medical condition and whether that medical condition was so severe as to disable plaintiff from being able to perform the duties of his position.  *See* Docket No. 52, at 18.  In *Vanieken-Ryals*, however, the Federal Circuit held only that OPM and the MSPB erred by declining to give weight to subjective evidence of a mental condition in the absence of objective medical evidence.  508 F.3d at 1038-43.  Nothing in *Vanieken-Ryals* supports the proposition that disability retirement can be granted by OPM without considering medical evidence.

### 3.  THE MSPB PROPERLY REJECTED PLAINTIFF'S ARGUMENT THAT THE BURDEN OF PRODUCTION SHOULD HAVE BEEN BORNE BY OPM

In his appeal to the MSPB, petitioner asserted that the burden of production of evidence should have been shifted from himself to OPM under the decision of the Federal Circuit in *Bruner*

*v. OPM*, 996 F.2d 290 (Fed. Cir. 1993).  *See* DEX 17, at *12 n.4 (MSPB rejecting this argument).

It appears that Plaintiff may be renewing this argument here.  *See* Docket No. 52, at 15-16.

Generally, the burden of proof in civil service retirement appeals rests on the applicant

seeking a benefit.  *See Cheeseman v. OPM*, 791 F.2d 138, 141 (Fed. Cir. 1986); *accord Bruner*, 996

F.2d at 292.  The *Bruner* Court did recognize a limited shift of the allocation of burdens, but only

when the applicant for disability annuity had been separated by his or her employing agency <u>because</u>

<u>of</u> a physical inability perform the duties of his or her position.  996 F.2d at 293-94.  In such a case,

the Federal Circuit held, the burden of production of evidence, but not the ultimate burden of proof,

shifted to OPM.  In *Bruner*, the petitioner was a nurse employed by the Department of Veterans

Affairs who had been removed by his employing agency on performance (not conduct) grounds

because back pain prevented him from performing the duties of his position.  *Id.* at 291.

In the present case, of course, as well-documented in DEX 7, 7A, and 9, Plaintiff was <u>not</u>

removed from his position by Army on grounds of physical inability to perform the duties of his

position (or for any performance-based reasons at all).  Rather, he was removed from his position

on misconduct grounds arising from tipping over his supervisor's desk onto his supervisor and

physically damaging his office and his office computer in a tempestuous rage.  Moreover, as stated

above, both the Supervisor's Statement and the Agency Certification of Accommodation and

Reassignment Efforts provided evidence that the agency had no prior knowledge that Plaintiff

suffered any kind of medical disease or injury and therefore, did not remove him on the basis of such

disease or injury.  Accordingly, as the MSPB correctly determined, there is no basis to apply

*Bruner*'s burden-shifting analysis in this case.

In sum, after this Court reviews the administrative record and carefully considers Plaintiff's

claims of error, Defendants submit that the conclusion is inescapable that there was no " substantial

departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination" by either OPM or the MSPB in considering Plaintiff's application for a disability retirement annuity. As a consequence, the MSPB decision should be affirmed.[4]

**B.**  **ASSUMING THE COURT REVISITS PLAINTIFF'S AMENDED COMPLAINT CHALLENGING HIS REMOVAL BY THE ARMY FOR WORKPLACE VIOLENCE, SUCH CLAIMS SHOULD BE DISMISSED ANEW OR SUMMARY JUDGMENT GRANTED IN FAVOR OF THE ARMY**

As noted above, this Court already has dismissed Plaintiff's claims against the Army arising from his removal, and Defendants do not believe those issues are before this Court on remand from the Fourth Circuit. Assuming the Court accepts Plaintiff's invitation to consider them anew, however, such claims are barred because they are untimely and otherwise have no merit.

**1.**  **PLAINTIFF'S AMENDED COMPLAINT CHALLENGING HIS REMOVAL FOR WORKPLACE VIOLENCE IS UNTIMELY FILED**

Pursuant to 5 U.S.C. § 7703(b)(2), Plaintiff had 30 days from receipt of the EEOC decision to file a judicial action in a U.S. District Court alleging that his removal was discriminatory.[5] On February 8, 2007, the EEOC OFO issued a decision in *Dedrick v. Harvey*, 2007 EEOPUB Lexis 395 (EEOC Feb. 8, 2007), and concurred with the MSPB. DEX 13. Plaintiff failed to file his Amended Complaint in this Court within the requisite time period, barring review of such claims.

---

[4]Insofar as Plaintiff may be continuing to assert the baseless contention (already rejected by this Court, *see* Docket No. 29, at 5) that the MSPB's decision finding him not eligible for a disability retirement annuity somehow is itself a violation of the Rehabilitation Act, Defendants respectfully incorporate by reference herein the arguments set forth in their earlier brief (Docket No. 19-1, at 25-28), demonstrating that the non-discriminatory standards employed by OPM under CSRS to determine entitlement to a disability retirement annuity are separate and distinct from the standards under the Rehabilitation Act.

[5] Pursuant to 5 U.S.C. § 7703(b)(1) the plaintiff could have sought judicial review of his case before the U.S. Court of Appeals for the Federal Circuit within 60 days of receipt of the notice of the final order if he waived his discrimination claims.

Plaintiff has asserted that he never received notice "at his legal address" from the EEOC as to the resolution of his petition.  Docket No. 5, at 4.  The notice of decision by the EEOC was certified as having been mailed on February 8, 2007, with copies sent to Plaintiff's counsel and also to Plaintiff in care of his attorney.  DEX 13, at 4.  A comparison of the address listed by Plaintiff's counsel and the address in the certificate of service completed by the EEOC confirms identical addresses.  *Compare id.* with DEX 12, at 21.

"It is well settled that notice of final action is 'received' when the agency delivers its notice to a claimant or a claimant's attorney – whichever comes first."  *Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 23-24 (D.D.C. 2008) (internal quotation and citations omitted).  In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), the Supreme Court confirmed that notice to an attorney constitutes notice to the client because "under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."  *Id.* at 92; *accord Rao v. Baker*, 898 F.2d 191, 196-97 (D.C. Cir. 1990) (charging plaintiff with notice of agency decision from the time his attorney received the decision)."  EEOC regulations also establish that the time frame for receipt of materials is computed from the time of receipt by the party's designated attorney.  29 C.F.R. § 1614.605(d).

Even assuming, purely for the sake of argument, that Mr. Taragin failed to provide notice of the decision to Plaintiff, which has not been alleged, settled law establishes that, at best, such lack of notice constitutes a "garden variety" claim of neglect that the courts should not excuse.  *Irwin*, 498 U.S. at 96.  Plaintiff's  Amended Complaint against the Secretary of the Army was filed nearly two months past the statutory deadline for such filing and was properly dismissed by this Court in 2008.

**2.      PLAINTIFF CANNOT RELATE BACK HIS COMPLAINT AGAINST THE SECRETARY OF THE ARMY TO HIS PRIOR JUDICIAL COMPLAINT AGAINST THE DIRECTOR OF OPM**

Plaintiff's original Complaint, filed February 20, 2007, alleged that the Director of OPM failed to approve his disability retirement. His Amended Complaint, filed on May 8, 2007, alleged that Plaintiff's removal from Federal employment by the Secretary of the Army was discriminatory. In his most-recent filing, he also claims his removal was otherwise improper (even if not discriminatory).

Under Fed. R. Civ. P. 15(c), a party can relate back to an earlier timely filed judicial complaint under limited circumstances not applicable here. Rule 15(c)(1) states:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A)     the law that provides the applicable statute of limitations allows relation back;
> >
> > (B)     the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> >
> > (C)     the amendment changes the party or the naming of the party against whom a claim is asserted, <u>if Rule 15(c)(1)(B) is satisfied and</u> if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i)      received such notice of the action that it will not be prejudiced in maintaining a defense on the merits; and
> > >
> > > (ii)     knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(Emphasis supplied). In this case, Rule 15(c)(1)(A) does not apply because 5 U.S.C. § 7703(b)(2) does not allow relation back. Similarly, Rule 15(c)(1)(B) does not apply because it is clear from Plaintiff's original Complaint (Docket No. 1) that he only named OPM as a defendant and he was

only seeking review of the MSPB's decision regarding his disability retirement annuity application. There is not even an attempt to state claims against the Army concerning his removal – such allegations are mentioned only as background to his disability retirement application. He specifically cites MSPB proceedings and decisions by date, but only those involving his disability retirement application, not his removal. Finally, Rule 15(c)(1)(C) cannot apply because Rule 15(c)(1)(B) is not satisfied.

Moreover, the U.S. Supreme Court has found that "an amendment would be futile if a plaintiff is trying to add defendants after the statute of limitations period has expired." *See Foman v. Davis*, 371 U.S. 178, 182, (1962); *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3rd Cir. 1988); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 467-75 (4th Cir. 2007) (discussing the requirements for a "mistake concerning the identity of the proper party"). In this action, Plaintiff not only attempts to untimely name a *new* federal defendant in a *different* executive department, he alleges a distinct and separate cause of action that is not raised (or even attempted to be raised) within his original Complaint.

The Army could not have been on notice from his original Complaint that Plaintiff was alleging an action against the Army related to his removal. In his Amended Complaint, Plaintiff attempted to name a new Federal defendant in a different Federal agency, and alleged a substantively new and time-barred legal challenges to a previously judicially unchallenged removal action. Such claims were properly dismissed by the Court pursuant to Fed. R. Civ. P. 12(b)(6).

**3. PLAINTIFF FAILS TO STATE, AND CANNOT ESTABLISH, A CLAIM UNDER THE REHABILITATION ACT BECAUSE HE WAS NOT TERMINATED SOLELY BY REASON OF HIS ALLEGED DISABILITY**

The Rehabilitation Act, 29 U.S.C. § 701, et seq., prohibits a covered entity from discriminating against a qualified individual with a disability because of the disability. *See* 29

U.S.C. § 791(g); 29 C.F.R. § 1614.203; and 29 C.F.R. Part 1630.  However, the Rehabilitation Act applies only where an "otherwise qualified handicapped individual" is subjected to adverse action taken "solely by reason of his handicap."  29 U.S.C. § 794; *Little v. F.B.I.*, 1 F.3d 255, 259 (4th Cir. 1993).

Assuming again that the Court were to revisit the dismissed claims concerning Plaintiff's removal, and assuming further that Plaintiff could establish that he is a "qualified handicapped individual" under the Rehabilitation Act (and he cannot), Plaintiff cannot demonstrate that he was terminated "solely by reason of his handicap."  It is beyond reasonable debate from the evidence of record that Plaintiff was terminated because, in a episode of rage, he tipped over his supervisor's desk onto his supervisor and destroyed government property.  The decision on Plaintiff's notice of proposed removal states that Plaintiff was dismissed for:  (1) conduct unbecoming a federal employee; (2) creating a disturbance causing disruption in the workplace; (3) destruction/damage of personal property of a supervisor; (4) destruction and misuse of government property; and (5) violation of the APG workplace violence policy.  DEX 9.  The notice goes on to state the specific factual basis for each of these charges, Plaintiff's violent conduct on February 10, 2005, which is the same conduct to which Plaintiff admitted in the agreement resolving his criminal charges.  DEX 5 & 6.  The record establishes that Plaintiff was terminated as a result of his misconduct and not any alleged disability.  Plaintiff's lengthy discussion about a former supervisor in the early 1990s in his motion is entirely irrelevant to the basis for his 2005 removal, even if it had been supported by the nature of evidence described in Rule 56.

The Fourth Circuit has held that dismissal for failure to state a claim is proper when a plaintiff cannot demonstrate he or she was terminated solely by reason of disability.  *See Little*, 1 F.3d at 259 ("[I]t is clear that an employer subject to the Rehabilitation Act must be permitted to

terminate its employee on account of egregious misconduct, irrespective of whether the employee is handicapped."); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n. 3 (4th Cir. 1997) ("[M]isconduct-even misconduct related to a disability-is not itself a disability, and an employer is free to fire an employee on that basis."); *Gasper v. Perry*, 1998 WL 393708 (4th Cir. Jul. 2, 1998). Plaintiff offers no contrary authority and it is clear that Plaintiff fails to state a claim under the Rehabilitation Act arising from his removal.

Even assuming, *arguendo*, that Plaintiff's Rehabilitation Act claims were timely and could properly survive dismissal (and they cannot), judgment should be entered in favor of Defendants because Plaintiff cannot establish even a *prima facie* case of disability discrimination.  As noted above, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability… shall, solely by reason of his or her disability, be…subject to discrimination ...." See 29 U.S.C. § 794(a); 29 C.F.R. § 1630.2(m).[6]  To satisfy the "otherwise qualified" prong of a *prima facie* case, Plaintiff must establish that he could perform the "essential functions" of his job.  *Little*, 1 F.3d at 257 (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979)).

Again as noted above, a disabled employee is not protected from termination as the result of misconduct, even if that misconduct is related to a disability.  "Misconduct – even misconduct

---

[6]This assumes that Plaintiff could even establish that he has a qualifying disability for purposes of the Rehabilitation Act, which Defendants do not concede.  It is Plaintiff's burden to prove that he is disabled within the meaning of the Act.  *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986). Defendants aver that Plaintiff cannot establish that his diagnosis with IED substantially limits any major life activity.  *See generally Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (as used in the ADA, the terms "substantially limits" and "major life activity" "need to be interpreted strictly to create a demanding standard for qualifying as disabled.").  The ADA (and by extension, the Rehabilitation Act) was significantly amended, effective January 1, 2009, but those changes do not apply retroactively.  *E.g., Shin v. University of Maryland Med. Sys.*, 2010 WL 850176, at *9 (4th Cir. Mar. 11, 2010).

-29-

related to a disability – is not itself a disability, and an employer is free to fire an employee on that basis." *Martinson v. Kinney Shoe Corp.*, 104 F.3d at 686 n.3; *Little*, 1 F.3d at 259.

There is no evidence in this case that the government terminated Plaintiff's employment because of his disability and not as a result of his misconduct.  Plaintiff admits that his alleged disability, IED, "had been undiagnosed prior to this incident."   Amended Complaint at ¶ 5. Additionally, Plaintiff's supervisors were not aware of any medical issues that he may have had. (DEX 3 at 101; DEX 2 at 28-29; DEX 10, at 6).   Plaintiff cannot establish that he was terminated due to a disorder no one was aware he possessed, rather than as a result of his violent actions.

Consequently, Plaintiff was not "otherwise qualified" for his position at AEC. There is no genuine issue of material fact regarding Plaintiff's violent outburst on the day in question. AEC management's actions were therefore appropriate in removing Plaintiff from federal service.  "It is clear that an employer subject to the Rehabilitation Act must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is handicapped." *Little*, 1 F.3d at 259.

As Plaintiff cannot establish even a *prima facie* case of disability discrimination, judgment should be entered in favor of Defendants in this case on any remaining claims under the Rehabilitation Act.

## 4.   PLAINTIFF'S REMAINING CHALLENGES TO HIS REMOVAL MUST BE REJECTED

In his recent submission to the Court, Plaintiff alleges that the Army utilized "statutorily barred management" to impose discipline.  Docket No. 52, at 10.  Plaintiff does not provide any legal authority to support his mistaken belief that his supervisor somehow was precluded from serving as a proposing official and nothing in the statute or implementing regulation governing the

procedures for adverse actions (including removals) precludes his second-line supervisor, Mr. Yuhas, from serving as the proposing official. *See* 5 U.S.C. § 7513; 5 C.F.R. § 752.604.

Plaintiff also claims that the penalty for his workplace violence should have been mitigated because the Army faces greater potential risks from soldiers who have served in combat. Docket No. 52, at 11-13. This unsupported argument deserves no credit. It is settled law that the MSPB should set aside an agency's selected penalty "[o]nly if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness." *Douglas v. Veterans Admin.,* 5 M.S.P.R. 280, 306 (1981); *see also USPS v. Gregory,* 534 U.S. at 5 (citing application of the *Douglas* factors as "the Board's settled procedures").

Indeed, on judicial review, the Federal Circuit has held that "we will not disturb a choice of penalty within the agency's discretion <u>unless the severity of the agency's action appears totally unwarranted in light of all factors</u>." *Lachance v. Devall,* 178 F.3d 1246, 1251 (Fed. Cir. 1999) (emphasis supplied; internal quotations omitted); *see also Beard v. GSA,* 801 F.2d 1318, 1321 (Fed. Cir. 1986) ("the employing (and not the reviewing) agency is in the best position to judge the impact of employee misconduct upon the operations of the agency . . . .") (quotation omitted); *Hunt v. Department of Health and Human Servs.,* 758 F.2d 608, 611 (Fed. Cir.1985) ("Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency."); *Hagmeyer v. Department of Treas.,* 757 F.2d 1281, 1284 (Fed. Cir.1985) (stating that penalty selection is "committed primarily and largely to the discretion of the agency" unless "the severity appears totally unwarranted").

In the MSPB's decision in this case (DEX 10), the administrative judge carefully reviewed the deciding official's detailed analysis of the relevant penalty factors, and found that "the deciding

-31-

official thoroughly discussed the evidence and the reasons for his decision to remove [Plaintiff]." DEX 10, at 10-11.  In finding no basis to overturn the Army's "well-documented decision" to remove Plaintiff, the administrative judge also cited prior Board authority finding removal appropriate after workplace outbursts from employees diagnosed with "explosive disorder, intermittent type." *Id.* at 11 (citing *Mazzarella v. USPS*, 56 M.S.P.R. 47, 53-56 (1992)).

The Army was clearly in the best position to evaluate the impact of Plaintiff's violent conduct on its operations, and there is no cause to say that removing Plaintiff for such extreme conduct "is totally unwarranted."

Plaintiff also contends that he was subjected to prohibited personnel actions in violation of 5 U.S.C. § 2302 – but does not specify to which prohibited actions he was allegedly subjected and in what manner.  *See* Docket No. 52, at 15.  The MSPB, however, found no violations and fully sustained the removal decision that was based upon Plaintiff's violent conduct.  (DEX 10).

Accordingly, under the deferential standard of review applicable to the non-discrimination portions of the MSPB's decision, Plaintiff cannot show any grounds for upsetting the MSPB determination.

Despite the passage of nearly five years since his removal, Plaintiff cannot demonstrate any reason for his termination except for his violent actions in the workplace on February 10, 2005.  He is unable to state, let alone prove, any viable claims arising from his removal and his Amended Complaint against the Secretary of the Army was properly dismissed by this Court in 2008.

## V.   <u>CONCLUSION</u>

For the reasons set forth herein and in their prior briefing in this case, the Secretary of the

Army and the Director of the Office of Personnel Management respectfully request that the Court

DENY Plaintiff's motion for summary judgment and GRANT their cross-motion for summary

judgment as to any claims not previously dismissed.

<div style="margin-left:40%">

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:   ___/  s  /_____
       Neil R. White
       Assistant United States Attorney
       U.S. Courthouse
       6500 Cherrywood Lane, Fourth Floor
       Greenbelt, MD  20770
       (301) 344-4433

       Counsel for Defendants

</div>