IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| EDWARD C. DEDRICK, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-07-0429 |
| JOHN BERRY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Edward Dedrick sued John Berry, Director of the Office of Personnel Management, and John McHugh, Secretary of the Army, ("the Defendants") for disability discrimination and improper denial of disability retirement benefits. For the following reasons, Dedrick's *pro se* motion for summary judgment will be denied, and the Defendants' cross motion for summary judgment will be granted.

I. Background[1]

Dedrick was employed as a general engineer by the Department of the Army at Aberdeen Proving Ground, Maryland for 24 years. Defs.' Cross Mot. Summ. J., Ex. 1. On February 10, 2005, Dedrick was involved in an altercation with his

---

[1] On cross motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir. 2003).

supervisor, Stephen Yuhas. *Id.* Upset that he would not be allowed to drive—but, instead required to fly—to a meeting in Texas, Dedrick "lifted up [Yuhas's] desk and tried to tip it over." *Id.,* Ex. 2 at 18:1-5. The desk hit Yuhas's knees and its contents spilled on him. *Id.* at 18:22-19:1. Dedrick returned to his office, where he kicked-in a partition, threw files on the floor, gouged the wood frame of a window, and smashed his computer. *Id.* at 22:1-10. The next day, Dedrick was placed on administrative leave and hospitalized for hypertension and emotional distress. Defs.' Cross Mot. Summ. J., Ex. 14-D at 2. Dedrick was arrested by military police and charged with (1) damaging government property, (2) simple assault, and (3) disturbing the peace.[2]

On August 4, 2005, Dedrick was removed from federal service because his "behavior on the 10th of February [was] not consistent with acceptable behavior for government employees," and Dedrick's own accounts of that day showed that he "was violent and disruptive" and acted without "regard for the safety of Mr. Yuhas" or other coworkers. *Id.,* Ex. 9 at 1-2.[3]

---

[2] Defs.' Cross Mot. Summ. J., Ex. 5. The charges were later dropped when Dedrick agreed to admit to his conduct and make restitution for the damaged property. *Id.,* Ex. 6.

[3] Dedrick was removed for: (1) conduct unbecoming of a federal employee, (2) causing disruption in the workplace, and (3) destroying government property and personal property of a supervisor. *Id.,* Ex. 9 at 1-2.

A.  Removal Appeal

Dedrick appealed his removal to the Merit Systems Protection Board ("MSPB"). He argued that his actions were caused by a disability—intermittent explosive disorder—and that the removal was "too harsh," and only imposed because "he was perceived as disabled." *Id.,* Ex. 10 at 2.

On July 5, 2006, MSPB administrative judge Sarah P. Clement denied Dedrick's appeal because "the Rehabilitation Act [and] the Americans with Disabilities Act [do not] prevent[] an employer from disciplining an employee with a disability for engaging in misconduct if it would impose the same discipline on an employee without a disability." *Id.* 1,8. Dedrick had not shown that the agency treated him differently than any other employee who had engaged in similar behavior. *Id.* at 9.

On November 16, 2006, a full MSPB Board denied Dedrick's petition for review of Clement's decision. Cross Mot. Summ. J., Ex. 11. On February 8, 2007, the Equal Employment Opportunity Commission ("EEOC") affirmed the MSPB's final decision, finding no evidence of discrimination. *Id.,* Ex. 13 at 2.

B.  Disability Retirement Benefits

On August 12, 2005, Dedrick applied to the United States Office of Personnel Management ("OPM") for disability retirement benefits. *Id.,* Ex. 14. In his application, Dedrick stated that he has high blood pressure, impulse control disorder, and

3

intermittent explosive disorder. *Id.* at 1. He stated that because "[t]ravel causes stress[] which raise[s] my blood pressure and [causes] increased likelihood of the disorders becoming active," he had requested that the Army "eliminate air travel, restrict travel in general, and allow [him] time off to reduce and cope with job stress[]." *Id.*[4]

On his application, Dedrick listed Dr. Jerome Rubin, PhD, as his physician.[5] *Id.* at 2. To support his application, Dedrick submitted May 5 and July 11, 2005 psychological evaluations from Dr. Rubin.

The May 5, 2005 evaluation noted that Dedrick had hypertension and a history of "unstable blood pressure triggered by external stress" and experienced "episodes of 'losing control' when in confrontation with others." Defs.' Cross Mot. Summ. J., Ex. 14-D at 2. Dr. Rubin concluded that Dedrick had intermittent explosive disorder, which causes "specific episodes of 'temper explosion,'" during which Dedrick would "fail[] to resist an aggressive impulse and act[] out with serious anger and aggression." *Id.* at 3. Dr. Rubin recommended that Dedrick undergo psychotherapy and anger management counseling. *Id.*

---

[4] Yuhas submitted a statement to OPM that no accommodations had been made for Dedrick because "[t]here was no knowledge of any . . . disability." *Id.,* Ex. 14 at 4.

[5] Dr. Rubin is a clinical psychologist. *Id.,* Ex. 14-D at 4.

Dr. Rubin's July 11, 2005 evaluation stated:

> Based upon my observation and clinical interview of [Dedrick], I diagnose him as having both an Impulse Control Disorder and an Intermittent Explosive Disorder. Both these conditions are recognized mental disorders identified by clinical observation and empirical evidence by experts in human behavior . . . [the disorders] affect[] Major Life Activities such as employment, domestic relations, interpersonal exchanges and public social conduct. The disorder causes Mr. Dedrick to have substantial limitations in Major Life Activities and he is assessed as disabled due to his combined mental and physical disorders.

*Id.* 8-9.

Dr. Rubin explained that:

> For most people, emotional stress causes blood pressure to elevate a little. In Mr. Dedrick, it causes his pressure to elevate a lot and dangerously high. It is not a form of willful misconduct such as alcohol abuse or drug abuse. He has a psycho-physiological condition due in part to disease of the circulatory system as diagnosed by other doctors. . . . . . a high stress state such as a dispute at work can cause an outburst of bad conduct with loss of impulse control . . . . The patient cannot just "calm himself down" but will expend the energy of an adrenaline rush and act out physically and vocally, then lapse into a long period of hours in a calmer state.

*Id.*

Dedrick also provided a June 27, 2005 letter from Dr. Rubin to his attorney, which stated that Dedrick had attended counseling sessions to "learn[] self-relaxation, how to avoid confrontation, and . . . early detection of internal signs that he is becoming frustrated and angry." *Id.* at 6. Dr. Rubin stated that Dedrick "fe[lt] that [the] sessions [were] helping

5

him" and had "a favorable prognosis for continued improvement and self-control in social and employment settings." *Id.* at 6.

On September 7, 2005, Dr. Robert Barthel, M.D., Chief of Occupational Medicine at Kirk U.S. Army Health Clinic at Aberdeen Proving Ground, evaluated Dr. Rubin's reports and found they were "inadequate to support [Dedrick's] application." Defs.' Cross Mot. Summ. J., Ex. 14-E. Dr. Barthel explained "[t]he medical condition noted is hypertension which is easily controlled by any number of medications without significant side effects." *Id.*

On February 9, 2006, OPM's initial decision denied Dedrick's application for benefits because he had failed to provide medical evidence that his symptoms were disabling. Defs.' Cross Mot. Summ. J., Ex. 15 at 1. The denial informed Dedrick that he could seek reconsideration and submit additional medical evidence. *Id.* at 4. Dedrick requested reconsideration of the initial decision, but did not provide new medical evidence. Defs.' Cross Mot Summ. J., Ex. 16 at 1-2.

On May 8, 2006, OPM issued its reconsideration decision, which affirmed the initial decision, which stated:

> [T]here are no records of conclusive diagnosis and treatment for hypertension prior to February 2005 and the evidence provided fails to prove such condition is not amenable to treatment. . . Doctor [Rubin] also reports . . . [that] you hav[e] . . . no expression of anger, abnormal suspicions or hostile attitude, no clinical evidence of delusions or hallucinations and

6

> no evidence of disordered thoughts or psychotic
> thinking. . . the evidence fails to document any
> history of uncontrolled anger or explosive episodes
> having taken place. And during your 24+ years of
> employment with the Federal Government, there is no
> record of you having a conduct issue in the work
> place.  Given the lack of documented history . . . and
> given the prognosis offered after just about one month
> of anger management session, the evidence clearly
> shows that . . . your newly diagnosed impulsive
> disorder can [not] be expected to render you disabled
> for at least one year from the date you filed your
> application with the OPM.

*Id.* at 2-3.

On June 2, 2006, Dedrick appealed OPM's decision to the MSPB. Defs.' Cross Mot. Summ. J., Ex. 17. To support his appeal, Dedrick submitted a June 26, 2006 evaluation from Dr. Rubin, which stated that Dedrick "ha[d] remained calm, stable and controlled on his current medication" with no "present problems with depression, anxiety, racing thoughts, obsessive-compulsive behavior, anger mood states." *Id.,* Ex. 17-A at 2. Dedrick had the "ability to conduct personal and business affairs in a responsible manner" and "reasonable accommodation . . . w[ould] allow [him] to function at a safe and efficient level" in the workplace. *Id.* at 2-3.

On September 11, 2006, MSPB administrative judge Michael Garrety affirmed OPM's decision. Defs.' Cross Mot. Summ. J., Ex. 17 at 1. Based on Dr. Rubin's reports and testimony and Dedrick's testimony, Garrety reasoned that:

7

> [Dedrick has] failed to demonstrate his entitlement to
> . . . disability retirement benefits.  Certainly, his
> blood pressure problems are well documented, and Dr.
> Rubin's diagnosis in 2005 of impulse control disorder
> and intermittent explosive disorder is reasoned and
> entitled to probative value . . . Nevertheless, the
> evidence clearly shows that these conditions were
> fully amenable to treatment and control and that they
> pose no impediment to employment in his position as a
> general engineer if he is compliant with treatment.

*Id.* at 4-5.

Dedrick petitioned the full MSPB Board for review of Garrety's decision.  On November 15, 2006, the Board denied his petition because review is granted "only when significant new evidence is presented . . . that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation."  Defs.' Cross Mot. Summ. J., Ex. 18.  Dedrick had presented "no new, previously unavailable evidence and . . . the administrative judge made no error in law or regulation."  *Id.*

On February 20, 2007, Dedrick sued the Defendants seeking review of the MSPB decisions on his disability discrimination and disability retirement benefits claims.  ECF No. 1.  On January 11, 2008, this Court granted the Defendants' motion to dismiss Dedrick's disability discrimination claim because "Dedrick ha[d] alleged no facts which, if proven, would constitute even a minimum *prima facie* case of disability discrimination." ECF No. 29 at 4-5.

The Court then transferred the case to the Federal Circuit to review Dedrick's disability retirement claim. On July 21, 2009, the Federal Circuit held that it lacked jurisdiction over Dedrick's claims and transferred the case to the Fourth Circuit. *Dedrick v. Berry,* 573 F.3d 1278, 1280 (Fed. Cir. 2009).

On April 1, 2010, the Fourth Circuit remanded the matter to this Court to adjudicate "Dedrick's unresolved disability retirement benefits claim." ECF No. 41 at 2. Dedrick moved for summary judgment on July 1, 2010. ECF No. 52. The Defendants filed their cross motion on July 29, 2010. ECF No. 53.

II. Analysis

    A. Standard of Review

        1. Summary Judgment

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen,* 327 F.3d at 363 (*citing Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003)).

2. Disability Retirement Benefits Appeal

The Civil Service Retirement Act ("the Retirement Act") provides for several types of retirement annuities to covered federal government employees, including disability retirement benefits. 5 U.S.C. § 8301 *et seq.* Under the Retirement Act, OPM "determine[s] questions of disability and dependency" in administering the provision of benefits to retired employees. 5 U.S.C. § 8347(c).

The Civil Service Reform Act ("the Reform Act") allows most federal employees to appeal adverse OPM decisions—including

those under the Retirement Act—to the MSPB. 5 U.S.C. § 7701, *et seq.*; *Lindahl v. Office of Personnel Mgmt.,* 470 U.S. 768, 773-74 (1985). Appeals from an MSPB determination are ordinarily heard by the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703 (b)(1). However, because the Federal Circuit does not have jurisdiction over most discrimination claims, an appeal from the MSPB involving discrimination and nondiscrimination claims is reviewed by a district court. *See Afifi v. Dep't of Interior,* 924 F.2d 61, 62-3 (4th Cir. 1991)("the entire action must be brought in district court, and bifurcated proceedings are prohibited").

In such a case, the discrimination claim is reviewed *de novo,* and the nondiscrimination claim is ordinarily reviewed under the arbitrary and capricious standard provided in 5 U.S.C. § 7703 (c). *Rupert v. Geren,* 605 F. Supp. 2d 704, 713 (D. Md. 2009).[6] But, judicial review of disability retirement

---

[6] 5 U.S.C. § 7703 (c) provides that for the nondiscrimination claim:

> [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence.

determinations is more limited.  Under 5 U.S.C. § 8347 (c), OPM's determinations of "disability and dependency" are "final and conclusive and are not subject to review."

The Supreme Court has held that § 8347 (c) precludes judicial review of "the factual underpinnings of disability [retirement] determinations." *Lindahl,* 470 U.S. at 791. However, judicial review is "available to determine whether 'there has been a substantial departure from important procedural rights, a misconstruction of government legislation, or some like error going to the heart of the administrative determination.'"  *Id.*  (*quoting Scroggins v. United States,* 397 F.2d 295, 297 (Ct. Cl. 1968)).

"The result is that, under *Scroggins* and *Lindahl,* [courts] cannot review [MSPB disability retirement] decisions for substantial evidence."  *Reilly v. Office of Personnel Mgmt.,* 571 F.3d 1372, 1377 (Fed. Cir. 2009).  Instead, "review [of] disability determinations is quite limited," extending to "the rare case where the petitioner alleges that the agency committed legal errors of sufficient gravity."  *Id.*

B.  The Defendants' Motion

The Defendants argue that summary judgment is appropriate because the MSPB committed no legal errors in reviewing OPM's denial of Dedrick's application.  Defs.' Cross Mot. Summ. J. 21-23.  Dedrick contends that the Defendants should not be granted

12

summary judgment because OPM and the MSPB failed to consider that he "served honorably for 13 years with medical problems resulting from the abuse of a former supervisor" and improperly relied on Dr. Barthel's testimony, which "should have been stricken from the record for lack of credibility."  Pl.'s Opp'n 10-11.[7]

An employee is "disabled" and qualifies for disability retirement benefits under the Retirement Act if he "has complete[d] 5 years of civilian service" and is "unable, because of disease or injury, to render useful and efficient service in [his] position and is not qualified for reassignment . . . to a vacant position."  5 U.S.C. § 8337 (a); *Licausi v. Office of Personnel Mgmt.,* 350 F.3d 1359, 1361-62 (Fed. Cir. 2003).  Generally, in his initial application and on appeal before the MSPB, the employee seeking the benefits has the burden to "prove that the medical condition in question prevents him or her from rendering efficient and useful service."  *Licausi,* 350 F.3d at 1362; 5 C.F.R. § 1201.56 (a)(2).

The disability determination is based upon "the probative value of all the evidence" and consideration should be given to:

---

[7]  Dedrick has provided a transcript from the hearing before administrative judge Clement, which includes Barthel's testimony that he practices "occupational medicine" and does not have a background in psychiatry or psychology.  Pl.'s Opp'n, Ex. A at 149:18-24.

13

"(1) the objective clinical findings; (2) diagnosis and expert medical opinions; and (3) subjective evidence of pain and disability; together with (4) all evidence concerning the effect of the [employee's] condition upon his ability to perform in the grade or class of positions last occupied." *Malan v. Dep't of Air Force,* 55 M.S.P.R. 283, 293 (1992).

Dedrick has failed to explain how his years of service are relevant to his disability, and the MSPB did not improperly consider the testimony of Dr. Barthel—a licensed physician specializing in occupational medicine, who reviewed Dedrick's medical files at OPM's direction to determine if they documented a disability.[8] These arguments do not raise a genuine dispute whether a "substantial departure from important procedural rights" or a legal error "going to the heart of the administrative determination" provide a basis for vacating the MSPB's decision. *Scroggins,* 397 F.2d at 297.[9] Further, this

---

[8] The Retirement Act specifically authorizes OPM, in determining questions of disability, to "direct at any time such medical or other examinations as it considers necessary." 5 U.S.C. § 8461 (d); *see also Reilly,* 571 F.3d at 1381-83 (MSPB must consider all competent medical evidence).

[9] *Compare Davis v. Office of Personnel Mgmt.,* 470 F.3d 1059, 1061 (Fed. Cir. 2006) (evidentiary rulings on admissibility of employee's exhibits were "matters within the administrative judge's discretion" and did not provide basis to vacate MSPB's denial)*with Reilly,* 571 F.3d at 1380-81(serious legal error committed when MSPB "clearly adopted a rule that post-resignation medical evidence is categorically irrelevant," which contradicted the "general rule that OPM [and the Board] must

14

Court cannot vacate the MSPB's decision on "assertions that [it] wrongly weighed the evidence." *Cabanayan v. Office of Personnel Mgmt.,* 375 Fed. Appx. 6, 8 (Fed. Cir. 2010)(*citing Anthony v. Office of Personnel Mgmt.,* 58 F.3d 620, 626 (Fed. Cir. 1995)).

Disability retirement benefits are not available when "an employee is unable to render useful and efficient service because that employee fails or refuses to follow or accept normal treatment." *Baker v. Office of Personnel Mgmt.,* 782 F.2d 993, 994 (Fed. Cir. 1986). In such a case, "the employee's disability flows, not from the disease or injury itself (as the statute requires), but from the employee's voluntary failure or refusal to take the available corrective or ameliorative action." *Id.* Thus, a disease or injury which can reasonably be treated to allow for "useful and efficient" service does not provide a basis for disability retirement benefits. *Id.*

The undisputed evidence is that Dedrick was denied disability retirement benefits because, based on Dr. Rubin's reports and testimony, the MSPB found that Dedrick's conditions were "fully amenable to treatment and control and . . . pose[d]

---

consider all of an applicant's competent medical evidence") (alterations in original) *and Vanieken-Ryals v. Office of Personnel Mgmt.,* 508 F.3d 1034, 1039-41 (Fed. Cir. 2007) (vacating and remanding MSPB's denial of benefits "predicated on its view that 'objective' medical evidence [was] required to prove disability" because "[n]o statute or applicable regulation . . . impose[d] such a requirement").

15

no impediment to employment in his position." Defs.' Cross Mot. Summ. J., Ex. 17 at 5. The treatment Dr. Rubin prescribed was psychotherapy and anger management counseling, and Dedrick's testimony confirmed that he was "in recovery" and "with medication, his blood pressure [remained] under control." *Id.* at 4. *See Baker,* 782 F.2d at 994 (conditions controlled by reasonable treatment are not disabling).

Dedrick also argues that the MSPB improperly placed the burden of proof on him to show that he was disabled, instead of on the Department of the Army to show that he was not. Pl.'s Mot. Summ. J. 15-16. "[P]roper allocation of the burden of proof is an important procedural right that may have substantive consequences." *Bruner v. Office of Personnel Mgmt.,* 996 F.2d 290, 292 (Fed. Cir. 1993). Thus, it may be reviewed under *Lindahl* and *Scroggins.* *Id.*

Here, the MSPB did not improperly place the burden of proof on Dedrick. The burden of proof in a disability retirement benefits case lies with the applicant, unless the government agency has terminated him because he is physically or mentally unable to perform his duties. *Id.* at 294. In such a case, the agency's action is "presumptively correct" and "produces an evidentiary presumption which serves to shift the burden of coming forward to the government. That is, the applicant is deemed to have met his burden of proof *prima facie*. The burden

16

of production then shifts to the government, to come forward with evidence sufficient to support a finding that the applicant is not disabled" within the meaning of the Retirement Act. *Id.*

The *Bruner* presumption "only applies whe[n] the employee has been separated for disablement." *Reese v. Office of Personnel Mgmt.,* 8 Fed. Appx. 966, 966 (Fed. Cir. 2010) (internal quotation marks omitted). The presumption does not apply here because the undisputed evidence is that Dedrick was removed for conduct unbecoming of a federal employee, causing a workplace disruption, and destroying property—not for physical or mental disablement. *See* Defs.' Cross Mot. Summ. J., Exs. 10-12; *Bruner,* 996 F.2d at 291 (presumption applied when employee "was terminated from employment on the ground that he was physically unable to perform his job" because of severe back pain).

That Dedrick's conditions could be redressed by routine treatment is a correct basis for denying disability retirement benefits.[10] Dedrick has not shown a genuine dispute whether the Board reached that conclusion by "a substantial departure from important procedural rights" or some "like error going to the heart of the . . . determination." *Scroggins,* 397 F.2d at 297.

---

[10] *Baker,* 782 F.2d at 994 ("Congress evidently wanted the 'disease or injury' to be the [source] of the findings of disability, not the applicant's unreasonable refusal to accept proffered and reasonable medical or therapeutic help.").

17

Accordingly, the Defendants' cross motion for summary judgment will be granted. Dedrick's motion will be denied.

III. Conclusion

For the reasons stated above, Dedrick's motion for summary judgment will be denied, and the Defendants' cross motion for summary judgment will be granted.


February 25, 2011                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge